******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSEPH ABRAHAM
(AC 38863)

Sheldon, Bright and Beach, Js.

*Syllabus*

Convicted of the crimes of sexual assault in the second degree and risk of
injury to a child in connection with the alleged sexual abuse of his
minor stepdaughter, the defendant appealed to this court. During trial,
the trial court held a hearing on the admissibility of a video recording
of a second forensic interview of the victim by a clinical social worker,
and ruled that certain statements made during the second interview were
admissible pursuant to the medical diagnosis and treatment exception
to the hearsay rule because the primary purpose of that interview was
medical. On appeal, the defendant claimed, inter alia, that the trial court
applied an incorrect standard to determine whether that video recording
was admissible under the medical treatment exception to the hearsay
rule and that, even if the court applied the correct standard, the video
recording was not admissible pursuant to that exception because the
second interview was not reasonably pertinent to medical treatment.
*Held* that the trial court did not abuse its discretion in admitting the
video recording of the victim's second forensic interview under the
medical treatment exception to the hearsay rule: although that court
applied an incorrect standard in ruling that the statements in the second
interview were admissible because the primary purpose of the interview
was medical, as the correct test is whether the interview had a medical
purpose from the victim's perspective, its ruling was nevertheless sus-
tainable under the medical treatment exception, as the correct standard
is broader and more inclusive than the standard applied by the trial
court, and if the primary purpose of the interview was medical, then it
necessarily had a medical purpose; moreover, an objective observer
could have concluded that the second interview was reasonably perti-
nent to medical treatment under the circumstances here, where there
was testimony that the second interview was conducted because the
victim had disclosed additional information, it was recommended after
the interview that the victim continue therapy and undergo a medical
examination, the victim was asked whether she had any worries or
any problems with any part of her body and disclosed actual sexual
intercourse, and the interview was conducted at a hospital and resulted
in a report that was added to the victim's medical file; furthermore, the
defendant's claim that successive interviews should categorically fall
outside the medical treatment exception was unavailing, as a trial court
must determine whether the successive interviews are reasonably perti-
nent to obtaining medical treatment and this court could not conclude
as a matter of law that successive interviews are never reasonably
pertinent to medical treatment, and even if the trial court's admission
of the second interview was improper, it did not substantially affect the
verdict given that the state's case was supported by physical evidence,
including DNA analysis, and that the victim testified at trial as to all of
the abuse that she had disclosed in the second forensic interview.

Argued December 4, 2017—officially released May 8, 2018

*Procedural History*

Substitute information charging the defendant with
the crime of sexual assault in the second degree and
with three counts of the crime of risk of injury to a child,
brought to the Superior Court in the judicial district of
Hartford and tried to a jury before *Mullarkey, J.*; verdict
and judgment of guilty of sexual assault in the second
degree and of two counts of risk of injury to a child, from
which the defendant appealed to this court. *Affirmed.*

*Glenn W. Falk*, assigned counsel, with whom, on the

brief, was *Robert M. Black*, legal fellow, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Chris A. Pelosi*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Joseph Abraham, was convicted, after a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), risk of injury to a child in violation of General Statutes § 53-21 (a) (2), and risk of injury to a child in violation of § 53-21 (a) (1).[1] On appeal, the defendant claims that the trial court improperly admitted a DVD recording of the victim's forensic interview. We disagree and affirm the judgment of the trial court.

The following facts, found by the court or undisputed, are relevant to this appeal. On February 27, 2013, the minor victim[2] reported to a social worker at her school that she had been sexually abused by the defendant, her stepfather.[3] The social worker relayed these allegations to the police and the Department of Children and Families (department) and an investigation ensued. The victim's mother arranged for the victim to stay at the house of a family friend for a few days and obtained a temporary restraining order against the defendant. The defendant then left the family home to stay elsewhere, so that the victim could return. Meanwhile, the department also directed the defendant not to stay in the same house as the victim. The department then referred the victim for a forensic interview.

On March 4, 2013, the victim was interviewed by Lisa Murphy-Cipolla, the clinical services coordinator at the Children's Advocacy Center at Saint Francis Hospital and Medical Center. During the interview, the victim revealed that the defendant had "raped her," but she did not provide further detail. After the first interview, Murphy-Cipolla recommended that the victim undergo therapy and a medical examination. Later that month, the department learned that the victim's mother had sought to modify the restraining order and that on one occasion the defendant had picked the victim up from school. Upon a visit to the family home, a department worker found the defendant in a room across the hall from the victim's bedroom; the defendant left the house upon the worker's request. Following this incident, the defendant and the victim's mother went to the ombudsman's office to file a complaint against the department worker. While at the office, they revealed that the victim had accompanied them there and was waiting in the car. Upon learning this, the ombudsman's office contacted the department because of concern that the victim and the defendant had been together.

On April 17, 2013, the department obtained temporary custody of the victim and subsequently placed her with her maternal aunt, who later formally adopted the victim. While staying with her aunt, the victim began to reveal additional information about the sexual abuse she had suffered. The victim's aunt reported this to the department and the victim was referred for another

forensic interview. On June 11, 2013, the victim was interviewed a second time by Murphy-Cipolla at the Children's Advocacy Center at Saint Francis Hospital and Medical Center. During this interview, the victim disclosed more extensive sexual abuse, including one instance of sexual intercourse. Murphy-Cipolla recommended continued therapy and a medical examination. Both forensic interviews were video recorded on DVDs and, after each interview, Murphy-Cipolla prepared a report and added it to the victim's medical file at Saint Francis Hospital.

The defendant subsequently was arrested and charged with sexual assault in the second degree, and three counts of risk of injury to a child. At trial, the state sought to introduce into evidence the DVD recording of the second interview, and the defendant objected. The court held a hearing on the admissibility of the DVD, at which the state argued that the interview was admissible pursuant to § 8-3 (5) of the Connecticut Code of Evidence—the medical treatment exception to the hearsay rule.[4] The state presented the testimony of Murphy-Cipolla and other witnesses. Murphy-Cipolla testified that the "primary purpose" of forensic interviews was to "elicit clear and accurate information . . . to minimize any additional trauma to the child and to make the appropriate recommendations for mental health and/or a medical exam." She testified further that forensic interviews were conducted upon referrals "primarily from the department . . . [but also] from the emergency department, pediatricians, police and, occasionally, a therapist." Finally, Murphy-Cipolla testified that forensic interviews were typically observed from behind a one-way mirror by police and/or department officials. She explained that toward the end of an interview, she typically conferred with the observers to ensure "that everybody has heard the same thing and see if [there are] any additional questions or anything that needs to be clarified." The defendant objected to the admission of the second interview, arguing that it "was geared [toward the] investigation of a criminal case and wasn't for the primary purpose of obtaining medical treatment."

In its oral ruling, the trial court noted that "there is evidence that the [victim's] counseling, [which] she was getting from the social worker at her middle school, was stopped. [The victim's] [m]other tried to put the defendant back on the [list of persons authorized to pick the victim up from school], [the] defendant was in the house on the date of the home visit by the [department] worker, which was subsequent to the issuance of the temporary restraining order. As far as we can tell . . . the temporary restraining order that was protecting the [victim] in the case was vacated or dismissed at the mother's insistence. The mother, along with the defendant, subsequent to the April 12, 2013 finding of the defendant hiding in the bedroom upstairs, brought

the victim, along with the both of them, to the ombudsman to make a complaint against the social worker. There had been additional disclosures that were made to [the victim's] aunt, now her adopted mother, and while there had been arrangements made for the beginning of counseling at the Klingberg Clinic, it had not begun yet. Under those circumstances, the department . . . requested that there be a second forensic interview.

"It is [the] court's opinion and finding that that was primarily for medical purposes, particularly additional counseling, particularly to find out if there had been any additional assaults against [the victim] during the period of time that had elapsed between the initial complaint and the number of contacts that the defendant had with her. Having watched the second DVD, although neither . . . Murphy-Cipolla nor Detective [Craig] Browning remembers exactly who asked what questions when there was a break taken, the break that was taken in the forensic interview [on] June 11, 2013, was clearly marked when . . . Murphy-Cipolla came back. She had additional questions for the [victim], particularly using the standard anatomical form and asking her about what parts of her body were touched by what parts of [the defendant's] body, asking about positions and asking about addresses and occurrences. That may be medical, but it's also investigatory, and I think in a cautious ruling that part of the DVD will be excluded and not shown to the jury. The first part . . . is medical, particularly in the circumstance [where] the defendant had additional contact with the [victim] and where her mental health counseling, as much as she got at [school], had been cancelled by her mother." The court then admitted the DVD of the second interview into evidence but excluded the portion of the interview subsequent to Murphy-Cipolla's discussion with the observers. The defendant thereafter introduced into evidence a section of the DVD of the first interview without objection from the state.

On appeal, the defendant argues that the trial court applied an incorrect standard to determine whether the second DVD was admissible under the medical treatment exception. He claims, however, that even had the court applied the correct standard, the second interview was not admissible pursuant to the medical treatment exception to the hearsay rule. Specifically, the defendant argues that the interview was not reasonably pertinent to medical treatment because it was the victim's second forensic interview and, thus, its purpose was more investigatory and less medical than that of the first interview. Consequently, the defendant claims, any relationship the second interview bore to medical treatment was "merely incidental." In making this argument, the defendant urges this court to consider the rationale behind the medical treatment exception: that the declarant is motivated to tell the truth when seeking medical

treatment. If, however, the declarant is simply reporting to an investigator, that motivation evaporates.

The defendant also contends that for reasons of policy, the medical treatment exception should apply only to forensic interviews that "truly are pertinent to medical diagnosis and treatment" and never, barring special circumstances, to successive interviews. He argues that admitting subsequent interviews under the exception would "risk making the very concept of the hearsay rules obsolete" because the state could "repeatedly refer a complaining witness for interviews" until "[it] get[s] a suitably compelling version of the story." Finally, the defendant argues that the trial court's improper admission of the second interview was harmful because it bolstered the victim's credibility.

The state agrees that the trial court applied an incorrect standard for the medical treatment exception but argues that the second DVD, nevertheless, was admissible under the correct standard.[5] The court ruled that the statements made during the second interview were admissible because the *primary* purpose of the interview was medical. As we conclude in this opinion, the correct test is whether the interview had *a* medical purpose from the victim's perspective. Concluding as we do, that it did have such a purpose, we hold that the victim's statements made during that interview were admissible under the medical treatment exception.

"We begin our analysis of the defendant's claim by setting forth the standard of review and relevant legal principles. To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." (Internal quotation marks omitted.) *State* v. *Griswold*, 160 Conn. App. 528, 536, 127 A.3d 189, cert. denied, 320 Conn. 907, 128 A.3d 952 (2015).

"The legal principles relating to the medical treatment exception are well settled. Admissibility of out-of-court statements made by a patient to a medical care provider depends on whether the statements were made for the purposes of obtaining medical diagnosis or treatment . . . and on whether the declarant's statements reasonably were related to achieving those ends. . . . The

term 'medical' encompasses psychological as well as somatic illnesses and conditions. . . . Furthermore, statements made by a sexual assault complainant to a social worker may fall within the exception if the social worker is found to have been acting within the chain of medical care." (Citations omitted.) *State* v. *Telford*, 108 Conn. App. 435, 440, 948 A.2d 350, cert. denied, 289 Conn. 905, 957 A.2d 875 (2008).

"[S]tatements may be reasonably pertinent . . . to obtaining medical diagnosis or treatment even when that was not the *primary purpose* of the inquiry that prompted them, or the principal motivation behind their expression." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Griswold*, supra, 160 Conn. App. 552–53. "Although [t]he medical treatment exception to the hearsay rule requires that the statements be both pertinent to treatment and motivated by a desire for treatment . . . in cases involving juveniles, [we] have permitted this requirement to be satisfied inferentially." (Internal quotation marks omitted.) Id., 556; see also *State* v. *Telford*, supra, 108 Conn. App. 441–42.[6]

In *Telford*, this court concluded that the victim's testimony that she had felt "upset," "mad," and "scared" as a result of sexual abuse, and that she had discussed the abuse with someone at a hospital, was sufficient to permit an inference that the purpose of her statements at her forensic interview had been to obtain medical treatment. *State* v. *Telford*, supra, 108 Conn. App. 443. Similarly, in *State* v. *Donald M.*, 113 Conn. App. 63, 71, 966 A.2d 266, cert. denied, 291 Conn. 910, 969 A.2d 174 (2009), this court held that a medical purpose could reasonably be inferred where the victim did not recall the purpose of the interview but the interviewer testified to informing the victim that she would meet with someone at the hospital to determine whether she needed therapy or other medical treatment.

In *Griswold*, this court concluded that the forensic interviews in that case were reasonably pertinent to medical treatment because the interviewers testified that "the purpose of their questions was to assist them in recommending medical examinations or mental health treatment" and that they normally inquired whether the victims had "any concerns about their bodies." *State* v. *Griswold*, supra, 160 Conn. App. 557. Although we observed in *Griswold* that "the primary purpose of many of [the] questions appear[ed] to be directed toward assisting law enforcement," the interviews were, nonetheless, reasonably pertinent to medical diagnosis because the information obtained was "available and provided to medical providers and mental health practitioners." Id.; see also *State* v. *Giovanni P.*, 155 Conn. App. 322, 331–32, 110 A.3d 442 (affirming trial court's conclusion that interview had medical purpose

based on testimony of interviewer), cert. denied, 316 Conn. 909, 111 A.3d 883 (2015). Recently, in *State* v. *Estrella J.C.*, 169 Conn. App. 56, 77–80, 148 A.3d 594 (2016), this court relied, in part, on the timing and context of the forensic interview to conclude that an objective observer could determine that the interview had a medical purpose. Because the victim in that case was undergoing treatment at the time that he was interviewed, this court held that the interview was reasonably pertinent to obtaining medical treatment. Id., 77. We observed further that "the involvement of a police officer in the interview does not automatically preclude a statement from falling within the medical diagnosis and treatment exception." Id.

Our case law, then, holds that the statements of a declarant may be admissible under the medical treatment exception if made in circumstances from which it reasonably may be inferred that the declarant understands that the interview has *a* medical purpose. Statements of others, including the interviewers, may be relevant to show the circumstances.

Applying these principles to the present case, we conclude that the trial court properly admitted the DVD of the second interview under the medical treatment exception. The interviewer, Murphy-Cipolla, was the clinical services coordinator at the Children's Advocacy Center at Saint Francis Hospital and Medical Center. She testified that the "primary purpose" of forensic interviews is to "elicit clear and accurate information . . . to minimize any additional trauma to the child and to make the appropriate recommendations for mental health and/or a medical exam." Murphy-Cipolla specifically testified that the second interview was conducted because the victim disclosed additional information and that, after the interview, she recommended continued therapy and a medical exam for the victim. As in *Griswold*, the victim in the present case was asked whether she had "any worries or any problems with any part of [her] body." The victim also was asked to identify, on an anatomical diagram, the body parts with which the defendant had had contact. The interview was conducted at Saint Francis Hospital and Medical Center and a report prepared after the interview was added to the victim's medical file. As in *Estrella J.C.*, this evidence provided a context which suggested a medical purpose for the victim's second interview. Finally, Murphy-Cipolla testified, in response to a direct question from the trial court, that in light of the victim's disclosure of actual sexual intercourse, the second interview could be pertinent to additional medical or mental health treatment because of the extent to which the sexual abuse affected the victim. We conclude that under these circumstances an objective observer could conclude that the second interview was reasonably pertinent to medical treatment. See *State* v. *Estrella J.C.*, supra, 169 Conn. App. 76 ("[w]e reach this conclusion

because . . . an objective observer could determine that the victim's statements . . . were reasonably pertinent to obtaining medical treatment").

The defendant correctly urges that the rationale underlying the medical treatment exception is that the declarant, in seeking medical treatment, has a motivation to tell the truth. That rationale, however, does not require that the statements be made or elicited for the sole purpose of medical treatment. See id., 74–75 ("[u]ndoubtedly, statements may be reasonably pertinent . . . to obtaining medical diagnosis or treatment even when that was not the *primary purpose* of the inquiry that prompted them, or the principal motivation behind their expression" [emphasis in original; internal quotation marks omitted]); see also *State* v. *Griswold*, supra, 160 Conn. App. 552–53 (same).[7] Because our law permits the rationale behind this exception to be satisfied even if there is an additional purpose, the defendant's argument is not persuasive. For this reason the trial court's ruling, albeit based on an erroneous standard, is sustainable under the medical treatment exception. If the *primary* purpose of the interview was medical, then it necessarily had *a* medical purpose. Because the correct standard is broader and more inclusive than the standard applied by the trial court, we find no error in the court's ruling. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the DVD recording of the second interview.

As for the defendant's policy argument, we are not persuaded that successive interviews should categorically fall outside the medical treatment exception. Admissibility under the medical treatment exception "turns principally on whether the declarant was seeking medical diagnosis or treatment, and the statements are reasonably pertinent to achieving those ends." (Internal quotation marks omitted.) *State* v. *Griswold*, supra, 160 Conn. App. 552. Although successive interviews may in some cases, as the defendant suggests, have minimal medical purposes, it is for the trial court to determine whether they were *reasonably pertinent* to obtaining medical treatment. We decline to hold as a matter of law that successive forensic interviews are never reasonably pertinent to medical treatment.

In light of our conclusion, we need not address at length the defendant's argument that the admission of the second DVD was harmful. We note, however, that the defendant acknowledges that the interview "did not contain significant factual claims or allegations independent of [the victim's] live testimony." He argues, nonetheless, that the interview bolstered the victim's credibility, "which was a key issue at trial." The state's case, however, was supported by physical evidence, including DNA analysis.[8] Moreover, the victim testified personally at trial as to all of the abuse that she had disclosed in the second interview.[9] Our review of the

record, therefore, leaves us with a fair assurance that the trial court's admission of the second interview, even if it had been improper, did not substantially affect the verdict. See *State* v. *Eddie N. C.*, 178 Conn. App. 147, 173, 174 A.3d 803 (2017) ("[a] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict" [internal quotation marks omitted]), cert. denied, 327 Conn. 1000, 176 A.3d 558 (2018).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant was acquitted as to an additional count of risk of injury to a child in violation of § 53-21 (a) (2).

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] The record reveals that the defendant first sexually abused the victim when she was eleven years old and continued to do so until she was fourteen years old. The final act of sexual abuse was committed on February 25, 2013.

[4] Section 8-3 of the Connecticut Code of Evidence provides in relevant part that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (5) . . . [a] statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment."

[5] The state also argues that the defendant did not claim at trial that the medical treatment exception should not apply to subsequent interviews as a matter of law. We review the defendant's argument, however, because it is tied to and falls within the scope of his principal claim that the second interview in this case was not admissible under the medical treatment exception. See *State* v. *Telford*, 108 Conn. App. 435, 441 n.5, 948 A.2d 350 (defendant allowed to make more specific argument on appeal because it fell within scope of objection at trial), cert. denied, 289 Conn. 905, 957 A.2d 875 (2008).

[6] There is, then, no requirement of direct evidence of the declarant's state of mind at the time of the statement. See *State* v. *Telford*, supra, 108 Conn. App. 441, in which this court agreed with the state's contention that "the objective circumstances of the interview [may] support an inference that a juvenile declarant knew of its medical purpose." This is not to say that direct evidence would not be useful in the inquiry.

[7] We note that the rationale underlying the medical treatment exception was satisfied in the circumstances of this case. An objective observer could conclude that the victim understood, from the circumstances of the second interview, that it was being conducted, at least in part, for medical treatment purposes. The interview took place at a hospital and the victim knew from the first interview that treatment and counseling would likely follow the second interview. That the interview may have had a dual purpose is of no moment.

[8] The last sexual assault occurred on February 25, 2013, two days before the victim reported the abuse on February 27, 2013. The physical evidence presented at trial included swabs taken from the victim's external genital area, containing semenogelin for which the defendant could not be ruled out as a source. In addition, the defendant was identified as a contributor for secretions on underwear the victim wore after the last sexual assault, and as the source of secretions on another pair of underwear retrieved from the victim's home.

[9] In fact, at trial, the victim revealed two instances of sexual intercourse with the defendant that she previously had not disclosed in either interview.