******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* EZEQUIEL R. R.*
## (AC 40846)

Keller, Elgo and Beach, Js.

*Syllabus*

Convicted of the crimes of aggravated sexual assault of a minor, sexual assault in the first degree, risk of injury to a child, and sexual assault in the fourth degree in connection with his alleged sexual abuse of the minor victim, the defendant appealed. The trial court held a hearing on the admissibility of a video recording of a forensic interview of the victim by a clinical child interview specialist, C, and ruled that certain statements made during that interview were admissible pursuant to the medical diagnosis or treatment exception to the hearsay rule. On appeal, the defendant claimed, inter alia, that the trial court erred by admitting into evidence the video recording of the forensic interview because the primary purpose of the interview was to obtain from the victim facts of the alleged sexual abuse to assist in a criminal investigation, and medical treatment was merely a secondary motive. *Held*:

1. The trial court properly determined that the victim's statements made during the forensic interview fell within the medical diagnosis or treatment exception to the hearsay rule and, thus, did not abuse its discretion in admitting the video recording of the forensic interview into evidence: the defendant's reliance on the "primary purpose" standard for determining the admissibility of the victim's statements under the medical diagnosis or treatment exception to the hearsay rule was misplaced, as statements during a forensic interview of a child that are offered solely under the medical diagnosis and treatment exception are admissible if such statements are reasonably pertinent to obtaining medical diagnosis or treatment, even if the primary purpose of the declarant's statements was not to obtain medical diagnosis and treatment, and in the present case there was sufficient evidence in the record to demonstrate that the victim's statements to C were reasonably pertinent to obtaining medical diagnosis and treatment to satisfy the requirement of that exception to the hearsay rule in light of the circumstances leading up to the victim's interview, the fact that the interview took place in a hospital, C's statements to the victim during the interview, including C's statement informing the victim that their conversation would be video recorded in case C or a doctor had any questions later on, and the fact that the victim did obtain a medical examination and was referred for therapy; furthermore, the presence of a police officer behind a one-way mirror during the interview, or the victim's knowledge that a police officer was observing the forensic interview, did not preclude the victim's statements from falling within the medical diagnosis or treatment exception to the hearsay rule.

2. The defendant's unpreserved claim that the trial court improperly allowed C to render an expert opinion that appeared to be based on the facts of the case was not reviewable: defense counsel's initial objection to C's testimony in the absence of the jury did not sufficiently raise the issue that the testimony was indirectly vouching for the credibility of the victim, as defense counsel emphasized that the testimony regarding the victim's delayed disclosure did not corroborate that the alleged abuse actually occurred and did not adequately apprise the court that C's use of hypotheticals impermissibly suggested that she was indirectly vouching for the victim's credibility, and, thus, the defendant was not relieved of his duty to make further objections if he thought C impermissibly related her testimony to the facts of the case; furthermore, after the jury reentered the courtroom, defense counsel objected for the first time to C's testimony on the ground that C was relating her testimony to the facts of the case, the trial court addressed that objection by providing a curative instruction, defense counsel subsequently objected again to an answer given by C but immediately withdrew his objection and did not object when C then provided an answer that is the subject of the present appeal, and, thus, defense counsel's failure to object to the portions of C's testimony challenged on appeal demonstrated that

defense counsel did not believe that C's statements were improper or that he was satisfied with the curative instruction the court previously provided.

Argued May 17—officially released August 7, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of aggravated sexual assault of a minor and sexual assault in the fourth degree, and with two counts of the crime of sexual assault in the first degree and four counts of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of New Britain, where the court, *D'Addabbo, J.*, denied the defendant's motion to preclude certain evidence; thereafter, the matter was tried to the jury; subsequently, the court granted in part the defendant's amended motion to preclude certain evidence; thereafter, the court denied the defendant's motions for a judgment of acquittal; verdict of guilty; subsequently, the court denied the defendant's motion for a new trial, granted in part the defendant's amended motion for a judgment of acquittal, and vacated the verdict of guilty as to one count of sexual assault in the first degree and one count of risk of injury to a child; judgment of guilty of aggravated sexual assault of a minor, sexual assault in the first degree, sexual assault in the fourth degree and three counts of risk of injury to a child, from which the defendant appealed. *Affirmed*.

*Justin T. Smith*, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Christian M. Watson*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Ezequiel R. R., appeals from the judgment of conviction, rendered following a jury trial, of one count of aggravated sexual assault of a minor in violation of General Statutes § 53a-70c (a) (1), one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), and one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A).[1] On appeal, the defendant claims that the trial court erred by (1) admitting into evidence a video recording of a forensic interview between a clinical child interview specialist and the child victim, and (2) allowing the clinical child interview specialist to render an expert opinion that appeared to be based on the facts of the case. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim was born on December 22, 2000, in Buffalo, New York. The victim's biological mother and biological father ended their relationship when she was two years old and the victim's mother began a relationship with the defendant shortly thereafter. During their near decadelong relationship, the defendant moved in with the victim and her mother, and the defendant and the victim's mother had two daughters together, one born in 2006 and one in 2009. Between approximately 2009 and 2012, the defendant sexually assaulted the victim in different residences that the defendant shared with the victim, the victim's mother, and the victim's two younger siblings.

In 2009, when the assaults first began, the family was living in a two bedroom apartment in Rocky Hill. Around this time, on a few different occasions, the defendant asked the victim to play the "ah game" with him when her mother was at work and her younger siblings were napping. On the first occasion, the victim thought the defendant was asking her to play a board game with him. Instead, the defendant led the victim to his bedroom, proceeded to pull down his pants, and lay with her on the bed. He instructed her "to open up [her] mouth and say ah and put [her] mouth on his penis," and then told her "that all boys and girls . . . played the game . . . ." The victim followed the defendant's demands and stopped a couple minutes later when she no longer wanted to do it. The defendant made the victim do this on multiple occasions.

In September, 2010, the family moved into another two bedroom apartment in Rocky Hill. At this new apartment, the defendant routinely climbed into the victim's bed with her in the morning and proceeded to inappropriately touch her.[2] He would lie behind the victim with her back to his chest and would touch her

breasts and vagina under her clothes with his hand. During this time, the victim could feel the defendant's erect penis against her back as he lay behind her.

On a different occasion, while the victim's mother was in the shower and the victim was eating lunch in the kitchen of the apartment, the defendant threw the victim over his shoulder and carried her into his bedroom. Against her will, he "pinned [her] onto the bed," pulled down her pants, and proceeded to lick her vagina. The victim tried to use her hands to push him away, but she was not strong enough to do so. After a couple of minutes, the defendant stopped holding her down; the victim pulled her pants up and yelled at the defendant. The defendant threatened the victim by telling her that she was "going to go out there and act happy or else he was going to drown [her] and [her] mom in a river." The victim did not report this incident to anyone at the time because she was "scared that he would hurt [her] and [her] mom."

The defendant and the victim's mother eventually ended their relationship. The victim, her mother, and her two siblings moved into an apartment in Hartford without the defendant, and in June, 2014, the then thirteen year old victim disclosed to her mother some of the things that the defendant had done to her beginning when she was eight or nine years old.

The next day, on June 27, 2014, the victim's mother brought her to the Connecticut Children's Medical Center in Hartford. The victim spoke with the doctors and told them about the defendant's sexual interactions with her. At the conclusion of that consultation, the emergency room doctor referred her to the Greater Hartford Children's Advocacy Center at Saint Francis Hospital and Medical Center.

On July 9, 2014, the victim was interviewed at the Greater Hartford Children's Advocacy Center by Lyndsey Craft, a clinical child interview specialist. This interview was recorded on video and was observed by a doctor, two medical residents, a Department of Children and Families (department) worker, and a detective from the Rocky Hill Police Department, who all observed from behind a one-way mirror.[3] The victim spoke with Craft and described her physical encounters with the defendant. On the basis of the victim's disclosures during her interview, Detective Frank Dannahey of the Rocky Hill Police Department prepared an arrest warrant for the defendant, and he was arrested. At trial, the victim testified about the assaults the defendant subjected her to. In addition, the jury heard testimony from Craft about her work with the Greater Hartford Children's Advocacy Center and about her interview with the victim. The video of the interview was also played for the jury. At the conclusion of the trial, the jury found the defendant guilty on all counts. The trial court sentenced him to a total effective sentence of

twenty-five years incarceration, followed by ten years of special parole. This timely appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court erred by admitting into evidence, pursuant to the medical diagnosis or treatment exception to the hearsay rule, the video recording of the forensic interview between Craft and the victim. We disagree.

The following additional facts and procedural history are relevant to this claim. On March 11, 2016, the defendant filed a motion in limine to preclude the video recording of the victim's forensic interview with Craft from being admitted into evidence, arguing that the video recording contains hearsay, and that "no hearsay exception applies, including the medical treatment exception." A motion hearing was held on three separate days in April, 2016, prior to the commencement of the trial, and the court heard testimonial evidence from Craft and Nancy Eiswirth, the defendant's expert witness, who opined about the purposes of Craft's interview with the victim.

At the hearing, Craft testified about her educational background in social work and her job as a clinical child interview specialist for the Greater Hartford Children's Advocacy Center. She testified that when the victim and her mother first arrived at the center, the victim's mother was required to sign Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320d et seq., compliant release forms because the interview was going to be made part of the victim's medical record. After these administrative tasks were completed, Craft indicated that she met with the victim alone in one of the adolescent interview rooms to speak with her. Craft testified that these types of interviews are recorded to "minimize the amount of times a child needs to speak about the same event."[4]

Furthermore, when asked what Craft thought the "most important or primary purpose" of the interviews she conducted was, Craft responded that it was to "formulate the treatment . . . which the child is going to receive, whether it be . . . medical treatment or therapeutic treatment, counseling, [or] therapy." Craft went on to testify about her interview with the victim and indicated that she conducted it in a neutral and nonleading way. Based on the victim's statements to Craft about the assaults, Craft recommended that the victim have a thorough medical examination with one of the medical professionals at the Greater Hartford Children's Advocacy Center and recommended that the victim begin therapy. Craft testified that the victim did receive an examination by Nina Livingston, a medical doctor, following the interview with her. Craft testified that Livingston serves as the medical director at the Greater

Hartford Children's Advocacy Center, and is also the medical director of the Suspected Child Abuse and Neglect program at Connecticut Children's Medical Center.

During the parties' arguments on the motion, defense counsel argued, inter alia, that the responses elicited from the victim were "not obtained for medical purposes [because] there was no diagnosis obtained" and that "Craft's interview itself [was] not medically coded and that she did not provide any reasons going forward that there was a medically needed reason for a diagnosis." The state responded by arguing that the victim's statements to Craft "were reasonabl[y] pertinent to obtain medical diagnosis or treatment and that . . . Craft sufficiently occupied a position within the chain of medical care to bring [the victim's] statement within the scope" of the exception. The state highlighted the fact that "after the interview was done, [Livingston] based her medical treatment or her medical exam around the questions and answers that [the victim] provided to . . . Craft."

On April 25, 2016, the court denied the motion to preclude the video recording of the forensic interview and later provided a written articulation of its decision. The court stated, in relevant part, that "[i]t should be noted that the definition of medical health provider in the stream of medical treatment has been expanded by our case law to include a social worker," citing to *State v. Cruz*, 260 Conn. 1, 10, 792 A.2d 823 (2002). After considering everything before it, the court found that the victim's "purpose was to obtain medical diagnosis and treatment and that the examiner was competent in achieving that result." The court then considered whether the "presence of the Rocky Hill police, a representative of [the department], and medical personnel alter [the victim's] purpose?" (Internal quotation marks omitted.) The court found that the "presence of these individuals does not supplant [the victim's] purpose. The examiner's goal was to obtain appropriate medical treatment for [the victim]. [Craft] did not consult with [the department] or the police prior to the interview and received no requests for clarification of [the victim's] answers. . . . Dr. Livingston followed the interview with an examination, and the [victim] was involved in therapy. Medical assistance and mental health therapy sometimes is necessary, even if there are no visible wounds. Testimonial evidence at the hearing was that the [victim] had spoken to the Rocky Hill police prior to the interview. The criminal investigation had already begun prior to the interview." As such, the court reemphasized that the "credible evidence presented at the hearing was that the information was presented from [the victim] for medical diagnosis and treatment," and that the court considered it "trustworthy."

On April 24, 2016, the defendant filed an amended

motion in limine requesting that in the event the court permitted the jury to view the video recording, that it preclude certain statements from being played to the jury. On the second day of trial, the court addressed the motion, determining that some of the statements in question were not relevant for the purposes of diagnosis or medical treatment. Thus, the court granted the motion in part, and denied it in part. Consistent with the court's ruling, the video was redacted to omit certain statements that the court determined were not relevant.

On the third day of trial, the state offered the video recording redacted in accord with the court's ruling. The court acknowledged the defendant's previous objection, made note of its ruling, and admitted the video recording into evidence.[5] The state proceeded to play the video for the jury.

We begin our analysis by setting forth our well established standard of review for evidentiary claims. "To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." (Internal quotation marks omitted.) *State* v. *Griswold*, 160 Conn. App. 528, 536, 127 A.3d 189, cert. denied, 320 Conn. 907, 128 A.3d 952 (2015).

At the outset, it is important that we note that the defendant does not make a sixth amendment constitutional challenge to the admission of the video recording. He concedes, as he must, that such a challenge cannot be made because the victim, who was interviewed in the video recording, testified at trial. As our case law has made manifest, when a victim appears at trial and is subject to cross-examination by the defendant, *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and its progeny do not apply. See *State* v. *Estrella J.C.*, 169 Conn. App. 56, 70, 148 A.3d 594 (2016).

The defendant, relying primarily on *State* v. *Arroyo*, 284 Conn. 597, 935 A.2d 975 (2007), argues that the "primary purpose" standard is the proper standard for determining admissibility under the medical diagnosis or treatment exception to the hearsay rule, and that the court failed to apply it. *Arroyo* involved a confrontation

clause challenge to the admission of a forensic interview. See id., 615, 625. The defendant claims that because the declarant was available to testify at trial in *Arroyo*, and because our Supreme Court "still conducted an analysis of whether the statements were testimonial under *Crawford*," the primary purpose standard is applicable here.[6] We find this argument unpersuasive. As this court has previously noted, "[a]fter our Supreme Court decided . . . *Arroyo* . . . and *State* v. *Maguire*, 310 Conn. 535, 563–71, 78 A.3d 828 (2013), it was unclear whether statements made during a forensic interview were inadmissible unless the *primary* purpose of the interview was for medical diagnosis or treatment. Subsequent to those cases, this court decided in *Griswold* that, if statements made during a forensic interview of the child are offered solely under the medical diagnosis and treatment exception, and the child is subject to cross-examination at trial, then such statements need only be reasonably pertinent to medical diagnosis and treatment to be admissible. . . . Accordingly, pursuant to *Griswold*, such statements are admissible even if the primary purpose of the declarant's statements was not to obtain medical diagnosis and treatment." (Citation omitted; emphasis in original.) *State* v. *Eddie N. C.*, 178 Conn. App. 147, 172 n.13, 174 A.3d 803 (2017), cert. denied, 327 Conn. 1000, 176 A.3d 558 (2018). As such, the defendant's reliance on the "primary purpose" standard in *Arroyo* is misplaced.

Having determined that no *Crawford* challenge is present on appeal, and guided by *Griswold*, we conclude that the applicability of the medical diagnosis and treatment exception to the hearsay rule must be determined on the merits of the exception itself, not by using the primary purpose standard. As to the relevant law, "[i]t is well settled that . . . [a]n out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." (Internal quotation marks omitted.) *State* v. *Carrion*, 313 Conn. 823, 837, 100 A.3d 361 (2014); Conn. Code Evid. § 8-2. Section 8-3 (5) of the Connecticut Code of Evidence titled, "Statement for purposes of obtaining medical diagnosis or treatment," provides an exception to the hearsay rule, requiring that the statement be "made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as *reasonably pertinent* to the medical diagnosis or treatment." (Emphasis added.) Conn. Code Evid. § 8-3 (5). "The rationale underlying the medical treatment exception to the hearsay rule is that the patient's desire to recover [her] health . . . will restrain [her] from giving inaccurate statements to a physician employed to advise or treat [her]." (Internal quotation marks omitted.) *State* v. *Cruz*, supra, 260 Conn. 7.

Additionally, the statement sought to be excluded from the hearsay rule need not be made to a physician so long as the person is acting within the chain of medical care.[7] Id., 10 (finding that social worker can act within chain of medical care). "Although [t]he medical treatment exception to the hearsay rule requires that the statements be both pertinent to treatment and motivated by a desire for treatment . . . in cases involving juveniles, our cases have permitted this requirement to be satisfied inferentially." (Citation omitted; internal quotation marks omitted.) *State* v. *Telford*, 108 Conn. App. 435, 441–42, 948 A.2d 350, cert. denied, 289 Conn. 905, 957 A.2d 875 (2008). Thus, "statements of a declarant may be admissible under the medical treatment exception if made in circumstances from which it reasonably may be inferred that the declarant understands that the interview has a medical purpose. Statements of others, including the interviewers, may be relevant to show the circumstances." (Emphasis omitted.) *State* v. *Abraham*, 181 Conn. App. 703, 713,      A.3d     , cert. denied, 329 Conn. 908,     A.3d     (2018).

In the present case, we have little difficulty concluding that there was sufficient evidence in the record to demonstrate that the victim's statements to Craft were reasonably pertinent to obtaining medical diagnosis and treatment to satisfy the requirements of the medical diagnosis or treatment exception to the hearsay rule. To begin, after the victim first visited Connecticut Children's Medical Center, an emergency room doctor referred her to the Greater Hartford Children's Advocacy Center. After arriving at the Greater Hartford Children's Advocacy Center, located on the premises of Saint Francis Hospital and Medical Center, for the forensic interview, the victim met with Craft in one of the adolescent interview rooms to speak about what had happened to her. At the beginning of their conversation, Craft informed the victim that their conversation would be video recorded in case Craft or the doctor had any questions later on. Craft informed the victim that this was done so that they did not have to keep asking the victim questions "over and over and over again."

Furthermore, during the motion in limine hearing, Craft testified that the victim was reporting "significant contact that could indeed pass along [sexually transmitted diseases], as well as other sexually transmitted infections." Craft also testified that although the victim had no physical complaints at the time, she seemed to exhibit some symptoms of post-traumatic stress disorder. Based on Craft's interview with the victim, she recommended the victim have a thorough medical exam with one of the medical professionals at the Greater Hartford Children's Advocacy Center, and also that she begin therapy. The video recording of the victim's interview with Craft, in addition to a report Craft prepared

at the conclusion of the interview, were made part of the victim's medical record. Following the interview, Craft spoke with Livingston to ensure that Livingston understood everything that Craft obtained from the interview, and based on Craft's recommendation, the victim did in fact obtain a medical evaluation by Livingston. The circumstances leading up to the victim's interview, the location where the interview took place, Craft's statements to the victim during the interview, and the fact that the victim did obtain a medical examination and was referred for therapy, could lead an objective observer to reasonably infer that the victim's statements were given in order to obtain medical treatment and diagnosis. See *State* v. *Abraham*, supra, 181 Conn. App. 713.

The defendant argues that the primary purpose of the forensic interview was to obtain from the victim facts of the alleged sexual abuse to assist in a criminal investigation but concedes, however, that the secondary motive was for medical treatment. Even if we were to assume the defendant is correct that the primary purpose was not for medical treatment, statements from the victim nevertheless may be admissible so long as there is sufficient evidence that the statements were reasonably pertinent to obtaining medical diagnosis and treatment. See *State* v. *Griswold*, supra, 160 Conn. App. 552–53, 557; see also *State* v. *Donald M.*, 113 Conn. App. 63, 71, 966 A.2d 266 (forensic interview statements admissible under medical diagnosis and treatment exception because purpose of interview was, at least in part, to determine whether victim was in need of medical treatment), cert. denied, 291 Conn. 910, 969 A.2d 174 (2009).

The defendant focuses his argument on the fact that there was some police involvement surrounding the interview. He argues, in part, that the presence of a police officer behind the one-way mirror during the interview demonstrates that the purpose of the interview was not for medical treatment or diagnosis. Additionally, he argues that the victim was well aware that there was police involvement and that her words were going to be used against the defendant. Even so, the mere presence of a police officer behind a one-way mirror or even the victim's knowledge that a police officer was observing the interview does not preclude a statement from falling within the medical diagnosis and treatment exception. See *State* v. *Miller*, 121 Conn. App. 775, 783, 998 A.2d 170 (purpose of interview was for medical treatment even though victim knew that police officers were present during interview), cert. denied, 298 Conn. 902, 3 A.3d 72 (2010). Craft testified that she did not discuss anything with the police officer prior to her interview with the victim, and even when Craft consulted with the people standing behind the mirror during a brief break, the police officer did not ask Craft to ask any additional questions. Although many

of Craft's questions did focus on determining what had happened to the victim in her encounters with the defendant, we find the record sufficient to conclude that the victim's statements made during the forensic interview with Craft were reasonably pertinent to her receiving medical treatment and diagnosis.

Accordingly, we conclude that the court properly determined that the victim's statements made during the forensic interview fell within the medical diagnosis and treatment exception to the hearsay rule. The court did not abuse its discretion in admitting the video recording of the forensic interview into evidence.

## II

The defendant's second claim on appeal is that the court improperly allowed Craft to render an expert opinion that appeared to be based on the facts of the case. Specifically, he argues that three statements Craft made during her testimony were admitted in violation of *State* v. *Favoccia*, 306 Conn. 770, 51 A.3d 1002 (2012), in which our Supreme Court concluded that concerns about indirect vouching for the credibility of witnesses require our courts to limit expert testimony about the behavioral characteristics of child sexual assault victims to that which is stated in general or hypothetical terms. Id., 803–805. Because the defendant did not preserve this claim for appellate review, we decline to review it.[8]

"The standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Our rules of practice make it clear that when an objection to evidence is made, a succinct statement of the grounds forming the basis for the objection must be made in such form as counsel desires it to be preserved and included in the record. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Francis D.*, 75 Conn. App. 1, 8, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003); see also Practice Book § 60-5 (appellate courts not bound to consider claim of error

unless it was distinctly raised at trial or arose subsequent to trial).

We briefly rehearse additional facts relevant to this claim. On day three of the trial, the prosecutor asked Craft if it was normal for a child that is sexually abused to "tell someone what happened right after the incident." After Craft responded, "No," defense counsel objected to the question itself and to the line of questioning in general. Outside the jury's presence, defense counsel questioned whether Craft was "qualified to be able to give . . . verified scientific information as to what children do if they are abused." After being given the opportunity to voir dire the witness, defense counsel agreed that the witness "can talk about the issue of delayed disclosure . . . ." Defense counsel argued, however, that testimony concerning delayed disclosure was permissible, "[s]o long as the limitation is . . . that the fact that there was a delayed disclosure is not corroborative or any proof that anything occurred." After hearing the prosecutor's assurances that this type of question would not be asked, the court responded to defense counsel's concerns by noting: "I don't think that question is going to be asked. If that question is asked, I know how to answer that—I know how to rule on that." The court asked defense counsel if it addressed his concerns and if the issue had been resolved. Defense counsel responded that "the court's ruled, and we'll move forward." The court responded: "Okay. I just—whether or not you agree with my ruling is fine. I just want to make sure I covered what you raised." Defense counsel responded, "You have."

Shortly after the jury reentered the courtroom and the prosecutor continued his questioning, defense counsel objected to a question asked by the prosecutor. The prosecutor asked Craft: "[W]hen a child is sexually abused, do they normally tell someone what happened right after the incident happens?" Defense counsel argued that the "question assumes an abuse has occurred." In response, the court asked the prosecutor to rephrase the question, and the prosecutor did so. Soon thereafter, defense counsel objected to one of Craft's responses to a question. This time, he argued that the testimony impermissibly related to the facts of the case. In response, the court sustained the objection and issued a sua sponte curative instruction stating that "Craft is testifying as based on her experience. You are to determine whether it applies in this case or not." After the next question was asked, defense counsel objected on the same ground but immediately withdrew the objection before the court could inquire further.

Thereafter, the prosecutor asked Craft: "What factors, based on the job that you do, affect when a child ultimately discloses sexual abuse? Are there certain factors?" Craft provided an answer that is the subject of the present claim.[9] The defendant argues that the

testimony was inadmissible because it indirectly related the facts of this case to her testimony. The defendant, however, did not object to the question or the testimony.

The defendant asserts on appeal that he was not required to make any further objections after the statements he now challenges on appeal were made. The defendant claims that because trial counsel raised the issue of Craft's "testimony being construed as vouching for the credibility of the victim outside of the presence of the jury and because the court ruled upon that motion," Practice Book § 60-5 requires no further objection.[10]

We disagree with the defendant's reliance on Practice Book § 60-5. Contrary to the defendant's argument, trial counsel's initial objection in the absence of the jury did not sufficiently, or at all, raise the issue that Craft's testimony was indirectly vouching for the credibility of the victim. Instead, defense counsel simply emphasized to the court that he wanted it to "be made clear that in no way [does] the fact that the disclosure is delayed in any way corroborate that abuse actually occurred." At no point during the court's colloquy with defense counsel did he invoke *Favoccia* as his authority for his objection or specifically apprise the court that Craft's use of hypotheticals impermissibly suggested that she was indirectly vouching for the victim's credibility. Because defense counsel's initial objection did not adequately apprise the court of the ground on which the defendant now relies, the defendant was not relieved of his duty to make further objections if he thought Craft impermissibly related her testimony to the facts of the case. See Practice Book § 60-5.

As reflected in our discussion of this claim, shortly after the jury came back into the courtroom following defense counsel's initial objection, defense counsel objected to one of the prosecutor's questions on the ground that the "question assumes an abuse has occurred." As the court indicated it would do, it "responded accordingly" by asking the prosecutor to rephrase the question. The prosecutor complied. After a few additional questions were asked, defense counsel objected once again. This time, however, the objection was not on the ground that the question assumed an abuse occurred; rather, it was the first time defense counsel objected to testimony on the ground that Craft was relating her testimony to the facts of the case. The court addressed the objection by providing a curative instruction. Shortly thereafter, defense counsel objected once again to an answer given by Craft but immediately withdrew his objection. Although other objections were made, they were made in response to statements not challenged in this appeal.

As the state points out, the failure to object to the three statements the defendant now challenges on

appeal presumably shows that defense counsel did not believe that Craft's statements were improper, or that he was satisfied with the curative instruction the court previously gave. There is no obligation for the court, which is not an advocate for either party but a neutral arbiter over the trial, to raise objections on the defendant's behalf. Because the defendant failed to put the court on notice of the potential error "while there [was] still time for the court to act," we conclude that the defendant failed to preserve his claim. (Internal quotation marks omitted.) *State* v. *Francis D.*, supra, 75 Conn. App. 8. Accordingly, we decline to afford it review.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] At sentencing, the court vacated a conviction of sexual assault in the first degree and a conviction of risk of injury to a child, determining that both convictions were lesser included offenses of the aggravated sexual assault of a minor conviction. Neither of these vacated convictions are part of the judgment of conviction being appealed.

[2] The victim and her two siblings shared a bedroom that contained a bunk bed; the victim occupied the top bunk and her two younger siblings occupied the bottom bunk. The victim testified that when some of the incidents occurred, her two younger siblings were sleeping in the same bedroom, and that the defendant climbed a ladder that led to the top bunk in order to get into bed with her.

[3] Craft testified that she is a member of a multidisciplinary team. As set forth in the statute, the purpose of these teams "is to advance and coordinate the prompt investigation of suspected cases of child abuse or neglect, to reduce the trauma of any child victim and to ensure the protection and treatment of the child." General Statutes § 17a-106a. A multidisciplinary team generally "consists of mental health and law enforcement professionals, as well as department employees, all of whom work collaboratively to investigate and treat cases of reported sexual abuse." *State* v. *Maguire*, 310 Conn. 535, 543, 78 A.3d 828 (2013). Craft, however, testified that protocols can vary depending on the jurisdiction within the state.

[4] In addition, at the beginning of Craft's interview with the victim, she informed the victim that their conversation would be video recorded in case Craft or the doctor had any questions later on, and that this was done so they did not have to keep asking her the same questions over again.

[5] In his motion for a new trial, the defendant renewed his challenge to the admission of the video recording, which the trial court denied.

[6] In support of the defendant's argument, he acknowledges that "[a]lthough it appears [our Supreme Court] did not have to analyze the statements at issue under *Crawford*, it chose that framework for the admissibility of the medical statements at issue." He further argues that this court should overrule our previous cases that have used an "at least in part" type analysis, and that we should instead use the primary purpose test that he suggests is required. The line of cases that the defendant challenges have concluded that forensic interview statements are admissible under the medical diagnosis or treatment exception when the purpose of the interview was, at least in part, to determine whether the victim was in need of medical treatment, and that the statements were reasonably pertinent to achieving those ends. See, e.g., *State* v. *Abraham*, 181 Conn. App. 703, 713,        A.3d     , cert. denied, 329 Conn. 908,      A.3d      (2018); *State* v. *Eddie N. C.*, 178 Conn. App. 147, 171, 174 A.3d 803 (2017), cert. denied, 327 Conn. 1000, 176 A.3d 558 (2018); *State* v. *Estrella J.C.*, supra, 169 Conn. App. 74–75; *State* v. *Griswold*, supra, 160 Conn. App. 552–53, 557; *State* v. *Donald M.*, 113 Conn. App. 63, 71, 966 A.2d 266, cert. denied, 291 Conn. 910, 969 A.2d 174 (2009).

Recognizing that one panel of this court cannot overrule another panel of this court; see *Samuel* v. *Hartford*, 154 Conn. App. 138, 144, 105 A.3d 333 (2014); the defendant filed a motion requesting en banc review prior to submitting his reply brief in this case. His motion was denied on April 18,

2018. Accordingly, we decline the defendant's invitation to depart from this court's precedent.

[7] Because the defendant on appeal does not challenge the trial court's determination that Craft was acting in the victim's chain of medical care, and because he conceded the point at trial, we limit our inquiry to whether the victim's statements to Craft were reasonably pertinent to her medical diagnosis or treatment.

[8] We also note that the defendant does not ask for any extraordinary method of review and that the claim is not of a constitutional nature such that review is warranted pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[9] Craft responded: "So, when a child decides to disclose, we think of it as two different processes. So it's either an accidental disclosure or a purposeful disclosure. An accidental disclosure is a child tells their friend, and then their friend goes and tells the school social worker, and that school social worker then calls down the child. The child didn't intend to disclose. She was looking or she was talking with a friend about it. *A purposeful disclosure is when the child's ready. They go and they talk to their mom. They go and talk to the doctor.* They make that actual disclosure.

"When a child is ready to disclose their alleged abuse certain factors come into play, such as . . . they don't want the abuse to continue. They found the power within themselves to try to stop it. They are afraid that *the abuse may happen to their younger siblings* or to somebody else they love and care about. Sometimes . . . if the person's in a caretaking role and they try to discipline the child, the child will then say, really, you're going to discipline me when you've been doing x, y and z. So it all depends on what . . . is going on for them at the time. A lot of times children disclose *when they've been removed from the perpetrator for a while* so they know that they feel safe. It's really dependent on, on what's going on for the child at the time." (Emphasis added.) We have emphasized those portions of Craft's testimony that the defendant challenges on appeal.

[10] Practice Book § 60-5 provides in relevant part: "In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same. . . ."