### STATE OF CONNECTICUT *v.* DONALD M.[1]
### (AC 28921)

Bishop, McLachlan and Gruendel, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued January 5—officially released March 10, 2009

*Robert E. Byron*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Paul N. Rotiroti*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Donald M., appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (2). On appeal, the defendant claims that the trial court improperly admitted into evidence (1) constancy of accusation testimony and (2) portions of an interview of the victim under the medical treatment exception to the hearsay rule. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 24, 2004, the victim, who was ten years old at the time, was staying overnight at the home of the defendant, his wife and two daughters. The victim's mother and the defendant's wife had been lifelong friends, and, as a result, the victim had a long and close relationship with the defendant and his family. On that night, the victim arrived at the defendant's home at approximately 7 p.m. The defendant's wife left for work at about 9:30 p.m., leaving the defendant at home with their younger daughter and the victim. The defendant's daughter went into the bathroom to take a shower. While the shower was running, the defendant pushed the victim onto the couch in the living room, tried to pull her shirt over her head, touched her breast and digitally penetrated her vagina. When the noise from the shower ceased, the defendant released the victim and told her not to speak of the incident, that it would "be a secret."

A couple of days later, the victim told two classmates that she had been raped by the defendant. One of the

classmates told her mother who, in turn, notified a school health aide. The health aide informed the department of children and families (department) of the victim's accusation. Katherine Levy, an investigative social worker with the department, spoke with the victim, who informed her that the defendant had touched her chest, thighs and "privates." Levy reported the matter to the police and arranged to have the victim interviewed at the child advocacy center at Saint Francis Hospital and Medical Center (hospital).

The defendant was charged with and convicted of one count of sexual assault in the first degree, two counts of sexual assault in the third degree, two counts of sexual assault in the fourth degree and two counts of risk of injury to a child. The defendant was sentenced to a total effective term of twenty years incarceration, execution suspended after fourteen years, seven years special parole, and twenty-five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly admitted constancy of accusation testimony.[2] Specifically, the defendant contends that the constancy of accusation doctrine does not apply to children. The defendant also claims that the doctrine no longer applies because women now routinely serve as jurors. Because the defendant did not raise these claims at trial, we decline to review them.

---

[2] Section 6-11 (c) of the Connecticut Code of Evidence provides: "A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes."

Prior to trial, the defendant filed a motion in limine, objecting to the admission of constancy of accusation evidence on the ground that there had been no delay in the victim's reporting of the alleged incident. Because there had been no reporting delay, the defendant argued, the admission of that testimony would be more prejudicial than probative. The defendant made the same objection during the trial following the state's offer of proof regarding the constancy of accusation testimony. The court overruled the objection, and the state presented constancy of accusation testimony from the victim's two classmates and Levy.

At no time did the defendant claim before the trial court that the constancy of accusation doctrine does not apply to children or that it should no longer apply because women now routinely serve as jurors. Although these claims were not preserved, the defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] Because, however, both of the defendant's claims are evidentiary in nature, and not constitutional, the defendant fails to satisfy the second prong of *Golding*. See *State* v. *Samuels*, 273 Conn. 541, 562, 871 A.2d 1005 (2005).

II

The defendant also claims that the medical treatment exception to the rule against hearsay did not justify admitting into evidence the redacted videotape of the interview of the victim because the state failed to prove

[3] Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

that the interview was with an individual within the chain of medical care and the record does not establish that the victim understood the interview to be part of a process for obtaining medical treatment. We disagree.

The following factual recitation is relevant to the resolution of the defendant's claims. The defendant filed a motion in limine regarding the admissibility of evidence relating to a videotaped interview of the victim by Annabella Agudelo, a clinical child interview specialist at the hospital. The defendant argued that the evidence constituted hearsay and did not fall within the medical treatment exception to the hearsay rule. At the hearing on the defendant's motion, Levy testified that the purpose of the interview at the hospital was to "assess [the victim] for psychological needs, therapy needs and also physically necessary needs." She further testified that she told the victim the same thing that she typically tells other children who report sexual abuse, which was that "she'll be going to [the hospital] to talk to a social worker or somebody who's like me to talk about what she had told me; that it was the social worker's job to make sure that she was safe and to give her any help in her therapy or to help her deal with what she went through; that we would also decide whether a doctor needed to look at her body if she had any worries about her body because of what happened." Levy indicated that she told the victim that "based on her interview and what she tells us, there would also be a determination as to whether an appointment should be made at that same place for the doctor to see her" and "whether she would need therapy or somebody that she could talk to about what happened to her." Levy testified that the victim had not expressed any medical needs but did indicate that she was worried about the consequences of reporting the abuse and was afraid of not being believed. Although a medical examination was not scheduled as a result of the interview, the

victim and her family were referred to the Wheeler Clinic for therapy.

After the victim testified on direct examination, defense counsel cross-examined her outside the presence of the jury regarding the hospital interview. Although, for the most part, the victim recalled very little about the interview or its purpose, she did, at one point, answer affirmatively when asked whether she talked to Agudelo "for the purpose of obtaining medical treatment."

Following further arguments by the parties, the court admitted a redacted version of the videotape into evidence. The court determined that the interview served a dual purpose in that the interview was conducted "in cooperation with the police to preserve a record of it so it could later be used." The court found that when Levy told the victim the purpose of the interview, "the [victim] understood that [the interview] would play into the decisions about seeking counseling, seeking treatment and perhaps considering medical treatment" and that the purpose of the interview was to "establish whether or not she had needs, and the needs that she might have had were emotional or psychological or psychiatric . . . ." The court concluded that the victim's statements during the hospital interview pertaining to the nature of the assault and the identity of the defendant fell within the medical treatment exception to the hearsay rule and were, therefore, admissible.

"To the extent a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no

'judgment call' by the trial court . . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Citations omitted.) *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007) (en banc). Here, because neither party contends that the statements in the interview were not hearsay, we need only determine whether the court properly concluded that those statements fell within the medical treatment exception to the hearsay rule.

Section 8-3 of the Connecticut Code of Evidence (2000), which describes the medical treatment exception to the hearsay rule, provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (5) . . . A statement made for purposes of obtaining medical treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical treatment or advice." In other words, the admissibility of out-of-court statements made by a patient to a medical care provider depends on whether the statements were made for the purposes of obtaining medical diagnosis or treatment. *State* v. *Kelly*, 256 Conn. 23, 44, 770 A.2d 908 (2001). The rationale for excluding from the hearsay rule statements made in furtherance of obtaining treatment is that "we presume that such statements are inherently reliable because the patient has an incentive to tell the truth in order to obtain a proper medical diagnosis and treatment." *State* v. *Cruz*, 260 Conn. 1, 10, 792 A.2d 823 (2002). The term "medical" encompasses psychological as well as somatic illnesses and conditions. *State* v. *Wood*, 208 Conn. 125, 133–34, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225

(1988). Statements made by a sexual assault complainant to a social worker may fall within the exception if the social worker is found to have been acting within the chain of medical care. *State* v. *Cruz*, supra, 10.

Here, the defendant contends that because Agudelo did not testify that she had any medical training or that she worked with a multidisciplinary team of medical providers, she was not within the chain of medical care. Agudelo testified that she had a bachelor's degree in psychology and a master's degree in social work, and the videotape reveals that Agudelo spoke with the victim about counseling and a possible medical appointment with a physician. It is, therefore, evident that the purpose of the interview was, at least in part, to determine whether the victim was in need of medical treatment. On that basis, we conclude that Agudelo was acting within the chain of medical care.

The defendant also claims that the victim did not know that the purpose of the interview was to determine whether she needed medical treatment. Although the victim testified that she did not recall the purpose of the interview, this requirement may be satisfied inferentially in matters involving juveniles. *State* v. *Telford*, 108 Conn. App. 435, 442, 948 A.2d 350, cert. denied, 289 Conn. 905, 957 A.2d 875 (2008). As noted, Levy testified that she told the victim that she would be meeting with someone at the hospital who would help her deal with what she went through and determine whether she needed therapy or other medical treatment. Accordingly, it was reasonable to infer that the victim was aware of the medical purpose of the interview.

On the basis of the foregoing, we conclude that the court properly ruled that the victim's statements were admissible under the medical treatment exception to the rule against hearsay.

The judgment is affirmed.

In this opinion the other judges concurred.