******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* FREDDY T.*

(AC 41755)

DiPentima, C. J., and Lavine and Bright, Js.**

*Syllabus*

Convicted, after a jury trial, of two counts of risk of injury to a child in
    violation of statute (§ 53-21 (a) (1) & (2)), stemming from his alleged
    sexual abuse of his minor child, the defendant appealed to this court.
    *Held* that the trial court abused its discretion by admitting into evidence
    portions of the video recording of a forensic interview with the defen-
    dant's child conducted by C, a licensed clinical social worker, because
    the child's statements failed to satisfy the requirements of the medical
    diagnosis and treatment exception to the rule against hearsay as set
    forth in the Code of Evidence (§ 8-3 (5)): the state failed to adequately
    demonstrate that the statements were reasonably pertinent to obtaining
    medical treatment as the state could not demonstrate that the child
    understood C's interview to be for medical treatment, the child had
    received medical care prior to the forensic interview and the record
    did not establish that the forensic interview was used to inform the
    subsequent medical examination of the child, and the basic purpose of
    the interview was for an investigative purpose; moreover, the court's
    error was not harmless and substantially affected the jury's verdict, as
    there was a lack of corroboration in the form of witnesses to the alleged
    sexual abuse or physical evidence, the child's trial testimony was at
    times contradictory but also inconsistent with statements made during
    the forensic interview, and the fact that the jury deadlocked on a count
    of sexual assault in the first degree supported the conclusion that the
    admission of portions of the forensic interview played a significant role
    in the jury's verdict of guilty of two counts of risk of injury to a child.

Argued May 11—officially released October 6, 2020

*Procedural History*

Substitute information charging the defendant with
one count of the crime of sexual assault in the first
degree and two counts of the crime of risk of injury to
a child, brought to the Superior Court in the judicial
district of Fairfield, geographical area number two, and
tried to the jury before *Pavia, J.*; verdict of guilty of
two counts of risk of injury to a child; thereafter, the
state entered a nolle prosequi as to the charge of sexual
assault in the first degree; subsequently, the court,
*Pavia, J.*, rendered judgment in accordance with the
verdict, from which the defendant appealed to this
court. *Reversed*; *new trial.*

*Virginia M. Paino*, certified legal intern, with whom
was *James B. Streeto*, senior assistant public defender,
for the appellant (defendant).

*Melissa E. Patterson*, assistant state's attorney, with
whom, on the brief, were *Josephy T. Corradino*, state's
attorney, *John C. Smriga*, former state's attorney, and
*Colleen P. Zingaro*, senior assistant state's attorney, for
the appellee (state).

*Jennifer B. Smith* filed a brief for the Connecticut
Criminal Defense Lawyers Association as amicus
curiae.

*Opinion*

LAVINE, J. The defendant, Freddy T., appeals from the judgment of conviction, rendered after a trial to a jury, of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and (2). On appeal, the defendant claims that (1) the court improperly admitted portions of a recording of a forensic interview of the child under the medical treatment exception to the hearsay rule that were harmful to him, (2) his convictions under both § 53-21 (a) (1) and (2) constitute double jeopardy, and (3) the court abused its discretion by declining to order disclosure of certain of the child's records following its in camera review of them. We agree that the court improperly admitted portions of the forensic interview of the child that constituted harm. We, therefore, reverse the judgment of the trial court.[1]

The following facts and procedural history are relevant to this appeal. On or about October 10, 2015, the defendant allegedly engaged in sexual acts with his then five year old daughter (child). The defendant allegedly kissed her and touched her vagina and "butt." The child reported the defendant's actions to her grandmother, who called the police on October 19, 2015. The child was taken to Bridgeport Hospital by ambulance, where she was examined by Karen Della-Giustina, a physician in the pediatric emergency department. That night, following Della-Giustina's examination, the child was interviewed by a hospital social worker, Abigail Alvarez-Quiles, who inquired about the child's family situation and mental state. Alvarez-Quiles made a report to the hotline for the Department of Children and Families (department). The responding officer also contacted the department and the Department of Social Services, and referred the grandmother's report to the department's Youth Bureau for further investigation. The child was discharged from the hospital that night. The emergency department report contained a general instruction from Della-Giustina to make an appointment with the child sexual assault team.

On October 23, 2015, the child was taken to the Center for Family Justice (center), which provides forensic interview services in sexual assault cases, where she met with Brenda Concepcion, a licensed clinical social worker and forensic interviewer, who conducted the forensic interview that is at issue in the present case. During the interview, the child identified the defendant as her father and disclosed several instances of his sexual conduct, including vaginal and anal penetration. Following the forensic interview, Concepcion recommended that the child receive mental health and psychiatric therapy services and have a forensic medical examination.[2]

The defendant was arrested on December 10, 2015.

On December 28, 2015, the defendant was charged in a long form information with one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of § 53-21 (a) (2). The state later filed an amended information, adding a second count of risk of injury to a child under § 53-21 (a) (1).

At trial, the following witnesses testified: Officer Laura Azevedo-Rasuk, Della-Giustina, Concepcion, the child, Detective Jessi Pizarro, and Danielle Williams.[3] Concepcion testified both before and after the child testified.

Prior to the trial, the state requested that the court review a video recording of the forensic interview of the child, indicating that it intended to offer portions of it during the trial pursuant to the medical diagnosis and treatment exception to the hearsay rule. The defendant objected on the grounds that the exception did not apply because medical treatment had concluded and that the purpose of the interview was investigative rather than medical. After Concepcion's initial testimony, the court heard argument on the state's motion and ruled that portions of the video recording were admissible. After the child testified, portions of the video of the forensic interview were shown to the jury.

The jury found the defendant guilty of both counts of risk of injury to a child. On the charge of sexual assault in the first degree under § 53a-70 (a) (2), the jury was deadlocked, and the court declared a mistrial. The state then entered a nolle prosequi on the count of sexual assault. The court accepted the jury's verdict and imposed a total effective sentence of eighteen years in prison, execution suspended after twelve years, with twenty years of probation and sexual offender registration upon release.[4] This appeal followed. Additional facts will be set out as necessary.

On appeal, the defendant's dispositive claim is that the trial court abused its discretion by admitting into evidence portions of the forensic interview of the child conducted by Concepcion. We agree.

We begin with the standard of review. "To the extent [that] a trial court's admission of evidence is based on an interpretation of [our law of evidence], our standard of review is plenary. . . . We review the trial court's decision to admit . . . evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . The trial court has wide discretion to determine the relevancy of evidence . . . . Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] concluded as it did." (Internal quotation marks omitted.) *Weaver* v. *McKnight*, 313 Conn. 393, 426, 97 A.3d 920

(2014).

"[E]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In a criminal case, [w]hen an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Jordan*, 329 Conn. 272, 287–88, 186 A.3d 1 (2018). "[W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the [defendant's] case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotations marks omitted.) *State* v. *Fernando V.*, 331 Conn. 201, 215, 202 A.3d 350 (2019).

The following additional facts inform our analysis. Della-Giustina testified that the purpose of her physical examination of the child on October 19, 2015, was "to evaluate and address any urgent or acute needs such as bleeding or medical conditions that are obvious." She conducted a "head to toe" examination but only a "very cursory" examination of the child's vaginal and rectal area. She could not perform an extensive examination of those parts of the child's body because the child would not allow it. Despite this "quick peek," which lasted approximately fifteen seconds, Della-Giustina saw no bleeding or discharge and the child's vaginal/rectal region appeared normal, with "no evidence of trauma or bleeding or bruising."[5]

Thereafter, when Concepcion conducted the forensic interview of the child on October 23, 2015, a multidisciplinary team comprised of Detective Michael Cantrell, Kechia Sadler and Vanessa Torres from the department, and Kayte Cwikla-Masas and Katherine Azana from the Child Advocacy Center/Center for Family Justice, observed the interview on a monitor.[6] Prior to the interview, members of this team provided Concepcion with information regarding the allegations against the defendant.[7] Concepcion testified on direct examination that the purpose of a forensic interview is "to obtain more information for the investigation." With respect to the

present case, Concepcion testified that the purpose of the interview was to help the multidisciplinary team determine how and if the investigation should go forward. The interview was of interest to multiple parties, including the department and the police. According to Concepcion, part of her responsibility was to provide recommendations for further treatment for the child on the basis of the interview. Concepcion prepared a written report of the interview that was placed into evidence, which included a referral for follow-up mental and physical treatment and examination.

Conception also testified that a forensic interview typically is utilized in cases involving allegations of abuse of young children. The interview facilitates a setting in which the child feels safe and comfortable talking. She testified that forensic interviewers at the center are trained to use an open-ended, rapport-building approach and to take into account the more limited focus of younger children. Interviewers set ground rules such as telling children that they can speak freely and that they should tell the interviewer if they do not understand something. In particular, Concepcion does not "use the words *true* or *not true* all the time but [tells] the child if you don't know an answer, just say I don't know." At the beginning of her interview with the child, Concepcion informed the child that "[she] could say whatever [she] want[ed] in this room because [she was] not in trouble with [her]." In addition, she told the child that "we talk about things that are in this room we talk about things that are true and we talk about safe, being safe." During the course of the interview, Concepcion utilized anatomically correct dolls and diagrams of male and female bodies, inviting the child to identify and describe various body parts. During the interview, the child disclosed details of the defendant's abuse of her, including vaginal and anal penetration. At one point, Concepcion asked the child the name of her dad, and the child gave a different name. When asked again, the child gave the name "Freddy." At the conclusion of the interview, Concepcion asked the child about staying safe and whether she had someone to talk to if she felt unsafe or scared.[8]  Eleven days after the forensic interview, on November 3, 2015, Janet Murphy, a pediatric nurse practitioner at Yale New Haven Hospital, conducted a forensic physical examination of the child. Murphy viewed Concepcion's summary report prior to examining the child.

The day before evidence began, following jury selection, the state made an oral proffer of evidence regarding portions of the video recording of the forensic interview under the medical diagnosis and treatment exception to the hearsay rule.[9] In its proffer, the state referenced *State* v. *Griswold*, 160 Conn. App. 528, 127 A.3d 189, cert. denied, 320 Conn. 907, 128 A.3d 952 (2015), asserting that the proffered portions were relevant to finding out "what happened to [the child] on

the physical and mental aspects of [the assault]" for purposes of an ultimate medical diagnosis, and that a foundation for the evidence could be laid via Concepcion's testimony. The state provided the court with the DVD of the interview and a transcript of the DVD's content to review, and the court heard argument regarding the proffer the following day mid-evidence, prior to the child's testimony. In its offer of proof, the state offered the evidence on the ground that Concepcion's interview obtained specific information about the allegations that was reasonably pertinent to ensuring an adequate follow-up medical examination. The defense objected on the ground that the medical diagnosis and treatment exception did not apply, given that the child already had received medical treatment and the interview was conducted for an investigative purpose. After reviewing the relevant portions of the interview, the court overruled the defendant's objection, relying on *State* v. *Estrella J.C.*, 169 Conn. App. 56, 148 A.3d 594 (2016), and *State* v. *Eddie N.C.*, 178 Conn. App. 147, 174 A.3d 803 (2017),[10] to conclude that the forensic interview was reasonably pertinent to the child's physical and mental health treatment. The trial court explained that the interview was pertinent to and motivated by medical treatment because Concepcion had referred the child for physical and mental follow-up examinations and treatment, both of which the hearsay exception covered, and that, as a result, the state had shown a sufficient connection between the interview and the follow-up treatment.[11]

At trial, the child testified that, during the interview, she had answered questions from Concepcion about male and female body parts. The child testified that she had told Concepcion that the defendant had touched certain parts of her body. The state then offered the previously identified portions of the forensic interview video and the court admitted them as a full exhibit pursuant to its prior ruling. During her trial testimony, the child identified body parts she previously had identified during the forensic interview, naming eye, mouth, hand, belly, butt, and hair. She responded in the affirmative when the assistant state's attorney asked her whether "anybody touch[ed] those parts," but responded in the negative when asked, "Did anybody put anything inside those parts?" The assistant state's attorney repeated the answer, and the child responded "[y]es."[12] The child also testified that she visited the defendant on weekends. She gave conflicting responses when the assistant state's attorney asked her if anything happened when she went to see the defendant; initially the child denied that anything happened and then answered that the defendant had touched her in his bedroom.[13] The child testified that the defendant had touched her "on" her pants, that the touching was always on top of her clothes, and that it occurred more than once. She testified that the defendant kissed her.

The child testified that the defendant had touched her on the "inside," pointing to the vaginal area on a diagram held by the assistant state's attorney. The defendant also touched the child on her butt, "inside." The child's clothes were on, and the touching was "[i]n [the child's] clothes." The child denied that she had seen the defendant with his clothes off. The jury then viewed the portions of the forensic interview, which contained the child's descriptions of the defendant's vaginal and anal penetration. The child confirmed that she talked to Concepcion.

On appeal, the defendant claims that at trial the court improperly admitted portions of the forensic interview under the medical diagnosis and treatment exception to the hearsay rule because the interview focused on aiding the police investigation and not on medical treatment for the child. The defendant argues that medical treatment for the child had concluded by the time the interview was conducted.[14] The state argues pursuant to the standard set out in *Griswold*, as well as *Estrella J.C.*, that the child's statements in response to Concepcion's questions were reasonably pertinent to obtaining medical treatment even though the interview also aided in the investigation. At trial, the state relied on Concepcion's testimony that the interview involved "multiple interests," that Concepcion referred the child for psychological and physical follow-up treatment, and that Conception asked the child if she had someone to talk to if she felt unsafe. On this basis, the state argues that it had laid a proper foundation to admit the child's statements on the extent and specifics of the defendant's assault under § 8-3 (5) of the Connecticut Code of Evidence because they were necessary to enable a fully effective forensic medical examination. We agree with the defendant, that portions of the interview at issue should not have been introduced into evidence and shown to the jury.

We begin our analysis by setting forth the relevant legal principles and applicable standard of review. "We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . In other words . . . after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception . . . it [becomes] vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." (Internal quotation marks omitted.) *State* v. *Griswold*, supra, 160 Conn. App. 536.

"Hearsay is an out-of-court statement offered for the truth of the matter asserted and generally is inadmissible. . . . The rules of evidence, however, recognize that certain out-of-court statements warrant an exception to the general rule that hearsay constitutes inadmis-

sible evidence." (Citations omitted.) *State* v. *Michael T.*, 194 Conn. App. 598, 611, 222 A.3d 105 (2019). The medical diagnosis and treatment exception to the hearsay rule is codified in § 8-3 (5) of the Connecticut Code of Evidence: "A statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment." Admissibility of such statements turns on whether "the declarant was seeking medical diagnosis or treatment, and the statements are reasonably pertinent to achieving those ends." (Internal quotation marks omitted.) *State* v. *Cruz*, 260 Conn. 1, 8, 792 A.2d 823 (2002). "[S]tatements made by a sexual assault victim to a social worker who is acting within the chain of medical care may be admissible under the medical treatment exception to the hearsay rule." Id., 10. "The rationale underlying the medical treatment exception to the hearsay rule is that the patient's desire to recover his [or her] health . . . will restrain him [or her] from giving inaccurate statements to a physician employed to advise or treat him [or her]." (Internal quotation marks omitted.) Id., 7. "The term 'medical' encompasses psychological as well as somatic illnesses and conditions." *State* v. *Telford*, 108 Conn. App. 435, 440, 948 A.2d 350, cert. denied, 289 Conn. 905, 957 A.2d 875 (2008).

"[S]tatements may be 'reasonably pertinent' . . . to obtaining medical diagnosis or treatment even when that was not the *primary purpose* of the inquiry that prompted them, or the principal motivation behind their expression." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Griswold*, supra, 160 Conn. App. 552–53. "Although [t]he medical treatment exception to the hearsay rule requires that the statements be both pertinent to treatment and motivated by a desire for treatment . . . in cases involving juveniles, our cases have permitted this requirement to be satisfied inferentially." (Citation omitted; internal quotation marks omitted.) *State* v. *Telford*, supra, 108 Conn. App. 441–42; see id., 443 (child's testimony supported inference that she understood statements to social worker were for treatment purposes); see also *State* v. *Donald M.*, 113 Conn. App. 63, 71, 966 A.2d 266 (2009) (interviewer's statements supported inference that child understood interview's medical purpose, even though child testified that she did not remember), cert. denied, 291 Conn. 910, 969 A.2d 174 (2009).

In *Manuel T.*, this court defined the test for determining the admissibility of hearsay statements under § 8-3 (5) of the Connecticut Code of Evidence.[15] See *State* v. *Manuel T.*, 186 Conn. App. 51, 61–62, 198 A.3d 648 (2018), cert. granted in part, 330 Conn. 968, 200 A.3d 189 (2019). "[T]he statements of a declarant may be admissible under the medical treatment exception if

made in circumstances from which it reasonably may be inferred that *the declarant understands that the interview has a medical purpose.* Statements of others, including the interviewers, may be relevant to show the circumstances." (Emphasis altered; internal quotation marks omitted.) Id., quoting *State* v. *Abraham*, 181 Conn. App. 703, 713, 187 A.3d 445, cert. denied, 329 Conn. 908, 186 A.3d 12 (2018). In *Manuel T.*, this court explained that "*the focus of the medical treatment exception is the declarant's understanding of the purpose of the interview . . . .*" (Emphasis added.) *State* v. *Manuel T.*, supra, 62. Accordingly, "the inquiry must be restricted to the circumstances that could be perceived by the declarant, as opposed to the motivations and intentions of the interviewer that were not apparent to the declarant." Id. This focus accords with the rationale for the medical diagnosis and treatment exception that patients are motivated to speak truthfully to their medical care providers when their own well-being is at stake.

Under our case law, the state need only show that the forensic interview had a medical purpose that the declarant reasonably understood. See *State* v. *Manuel T.*, supra, 186 Conn. 61–62; *State* v. *Abraham*, supra, 181 Conn. App. 713. This court on numerous occasions has upheld the admission of forensic interviews where the purpose of the interview was primarily investigative. See, e.g., *State* v. *Manuel T.*, supra, 186 Conn. App. 63–64; *State* v. *Eddie N.C.*, supra, 178 Conn. App. 173; *State* v. *Estrella J.C.*, supra, 169 Conn. App. 77–78; *State* v. *Griswold*, supra, 160 Conn. App. 552–53. The issue in the present case, therefore, turns on whether the five year old child, the declarant, understood the interview to have a medical purpose. See *State* v. *Manuel T.*, supra, 62.

We conclude that the state has not demonstrated, on the basis of the interview's content, that the child understood that Concepcion's interview was for medical treatment purposes. Our review of the interview supports the conclusion that the basic purpose of the interview was "to obtain more information for the investigation," as Concepcion testified. Because the medically-oriented content was in fact de minimis, the child would not have understood the interview to be anything but investigative, if she understood its purpose at all. The interview was focused on determining what had happened, until its conclusion where Concepcion conveyed "brief safety messages" to the child, and referred her for psychiatric therapy and a further forensic examination following the interview. The state argued before the trial court that Concepcion's inquiries about the alleged assault served the medical purpose of gathering information for the subsequent physical examination to which Concepcion referred the child. The trial court agreed, ruling that the interview had a medical purpose in addition to the investigative, "borne out by the fact

that then [Concepcion] does refer the [child] for these two types of treatments . . . ." The test, however, is what the declarant understands, not what the interviewer's motivation is. See *State* v. *Manuel T.*, supra, 186 Conn. App. 62. Unlike *Donald M.*, where the child was told in advance "that she would be meeting with someone at the hospital who would help her deal with what she went through and determine whether she needed therapy or other medical treatment statements"; *State* v. *Donald M.*, supra, 113 Conn. App. 71; the record does not show that the child understood the interview to relate to medical treatment or that it would lead to follow-up medical treatment in the present case. At oral argument, the state argued that, even though Concepcion's inquiry about the child's safety did not occur until the end of the interview, it still helps inform the conclusion that the child understood previous portions of the interview to relate to medical treatment. We find this argument unpersuasive. The brief medical content at the interview's conclusion was insufficient to give the questioning that preceded it a reasonably pertinent medical purpose.[16]

Second, the fact that the child had been examined at the hospital prior to the time the forensic interview was conducted weighs against the inference that the child understood the interview's purpose to be medical. Della-Giustina examined the child when she was taken to the hospital. Afterward, Alvarez-Quiles, the hospital social worker, interviewed the child. Concepcion's interview occurred four days after the child had completed her immediate medical treatment. Moreover, the subsequent forensic medical examination at Yale-New Haven Hospital occurred eleven days after the interview. Thus, the timing of examinations does not support an inference that the child would have understood that the forensic interview was in the service of continuing medical treatment.

In its ruling, the court in the present case relied on *State* v. *Estrella J.C.*, supra, 169 Conn. App. 56, and *State* v. *Eddie N.C.*, supra, 178 Conn. App. 147, both of which are distinguishable from the present case on the basis of not only interview content but also contextual timing. In *Estrella J.C.*, this court noted, in upholding the forensic interview's admission under the hearsay exception, that the child was undergoing treatment for post-traumatic stress disorder resulting from the defendant's acts at the time the interview occurred and that "the physical examination of the [child] was informed by the forensic interview," given that the pediatric nurse practitioner had met with the forensic interviewer prior to the physical examination to obtain medical history and other relevant details. *State* v. *Estrella J.C.*, supra, 169 Conn. App. 80. Because the timing and context supported the inference that the child was seeking medical treatment and the interview reasonably was pertinent to medical treatment, this court concluded that

the court properly admitted the child's statements even though many of the questions asked of the child pertained to what had happened between the child and the defendant. The forensic interview at issue in the present case, on the contrary, did not occur in conjunction with medical treatment but followed the child's physical examination, and the record does not establish that it was used directly to inform the subsequent examination to the extent that the forensic interview was used in *Estrella J.C.*

In *Eddie N.C.*, the trial court admitted statements from the child, A, made to a clinical social worker at the Yale Child Sexual Abuse Clinic. *State* v. *Eddie N.C.*, supra, 178 Conn. App. 169. A preliminary interview was conducted "so that [Lisa] Pavlovic [a physician] could fully understand the nature of the complaint before her examination." Id., 168. The trial court determined that "the fact that at least one purpose of the interview was to aid . . . Pavlovic in her follow-up examination of A was sufficient to qualify A's statements under the medical diagnosis and treatment exception." Id., 169. The follow-up examination's purpose was "to determine whether A's injuries had healed." Id., 168. This court found the statement was admissible because "the purpose of [Monica] Vidro's interview was to help . . . Pavlovic better understand the nature of A's complaint so that . . . Pavlovic could conduct a thorough medical examination of A." Id., 173. In the present case, Concepcion's referral did not occur until after the conclusion of the forensic interview, and the facts do not support an inference that the child was aware that she was being interviewed to determine whether and what kind of medical and psychological follow-up treatment may be recommended. Moreover, the child in the present case made no physical or emotional complaints to Conception. Unlike Concepcion's interview, the interview in *Eddie N.C.* demonstrated a clearer inference that the child in that case would have understood it pertained to medical treatment.

Finally, the focus on the understanding of the declarant that there is a medical purpose for the interview remains even when the declarant is a young child. The law in Connecticut is that, although statements made by young children are admissible under the medical diagnosis and treatment exception to the hearsay rule, the principle holds true that "[s]tatements made [in sexual assault cases] . . . reciting history, causation, and the identity of the person causing the injury should be scrutinized to ensure that they are generated for the proper purpose, namely treatment and not litigation." E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 8.17.4 (b), p. 569, citing *State* v. *DePastino*, 228 Conn. 552, 566 n.10, 638 A.2d 578 (1994). "Because of the difficulty of ascertaining a child's subjective understanding of the purpose for which the statement was made, the court should identify indicia

of reliability before admitting such statements." E. Prescott, supra, § 8.17.2, p. 567, citing *State* v. *Juan V.*, 109 Conn. App. 431, 445-47, 951 A.2d 651 (2000); *State* v. *Donald M.*, supra, 113 Conn. App. 71. Consequently, our case law recognizes that the age of a child sometimes necessitates allowing an inference, rather than direct evidence, to conclude that the declarant understood the purpose of the interview to be medical. See, e.g., *State* v. *Griswold*, supra, 160 Conn. App. 556; *State* v. *Telford*, supra, 108 Conn. App. 442. The need for reliability remains no less important, however, and the trial court's responsibility to consider it prior to admitting the evidence is implicit in the rationale for the medical diagnosis and treatment exception. The rationale of § 8-3 (5) of the Connecticut Code of Evidence is that reliability stems from a declarant's motivation to be truthful with medical care providers. See, e.g., *State* v. *Cruz*, supra, 260 Conn. 7. This court recently iterated that the exception looks objectively to whether a reasonable declarant would understand that the interview had a medical purpose. See *State* v. *Manuel T.*, supra, 186 Conn. App. 64 n.15 ("In addition, whether the information provided by the declarant ultimately is determined to be true, false, or inconsistent has never been the test to determine whether the statement should be admitted in the first place. Again, the test focuses on the declarant's understanding of the purpose for the interview, not the adverse party's attacks on the veracity of the statements made during the interview.") Other courts similarly have held that a foundation regarding the declarant's understanding is required when dealing with the medical diagnosis and treatment hearsay exception even with young children. "In cases involving very young children, who do not seek medical treatment by themselves but instead are brought to the physician by someone else, there must be evidence that the child understood the physician's role in order to trigger the motivation to provide truthful information." *United States* v. *Barrett*, 8 F.3d 1296, 1300 (8th Cir. 1993). In Indiana, "courts have recognized that alleged child victims might be too young for a fair presumption they understood the medical purpose, and have required a foundation that they had this understanding." *Hoglund* v. *Neal*, 959 F.3d 819, 834 (7th Cir. 2020). The defendant cites *VanPatten* v. *State*, 986 N.E.2d 255, 265 (Ind. 2013), which is instructive. Citing *Barrett*, the court in *VanPatten* held that "[s]uch young children may not understand the nature of the examination, the function of the examiner, and may not necessarily make the necessary link between truthful responses and accurate medical treatment. In that circumstance, there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information." (Internal quotation marks omitted.) Id., 261. The child in the present case was five years old at the time of the forensic interview. There was no evidence, direct or indirect, that she understood that there

was a medical purpose for the forensic interview. In the absence of such evidence, the jury should not have been permitted to see and hear the child during the forensic interview.

Having demonstrated that the trial court abused its discretion when it admitted portions of the forensic interview of the child into evidence, we turn to whether the court's error was harmful. Examining the evidence here, we cannot conclude, with a fair assurance, that the trial court's abuse of discretion did not substantially affect the jury's verdict. In the present case, the state's case turned on the credibility of the five year old child. Given the absence of witnesses to the alleged sexual assault and the lack of physical evidence relating to it, the state relied on the video of the forensic interview and the testimony of the child to establish the facts of the charged conduct. In cases of sexual assault or risk of injury to a child, a lack of "corroborating physical evidence or any witnesses to the alleged sexual assaults"; *State* v. *Fernando V.*, supra, 331 Conn. 216; weakens the state's case. See id., 216–17 (finding exclusion of defense witness testimony harmful where case turned on the testimony of state's witness); see also *State* v. *Favoccia*, 306 Conn. 770, 809, 51 A.3d 1002 (2012) (describing sexual assault cases that turn on complainant's credibility as not particularly strong); *State* v. *Grenier*, 257 Conn. 797, 807–808, 778 A.2d 159 (2001) ("state's case rested entirely on S's credibility . . . inasmuch as S's version of the events provided the only evidence of the defendant's guilt, the state's case was not particularly strong"). In the present case, Della-Giustina testified that the child's intimate parts appeared normal, with no evidence of trauma, and the state did not produce any witnesses to the abuse apart from the child herself. Contra *State* v. *Eddie N.C.*, supra, 178 Conn. App. 174 (noting that any error was harmless because "the overall strength of the state's case was high," with physical evidence of abuse and corroborating witness who testified to defendant's abuse).

This was a close case. The jury was deadlocked on the count of sexual assault and found the defendant guilty of only the charges of risk of injury to a child. See *State* v. *Favoccia*, supra, 306 Conn. 813 ("[I]t is highly significant that . . . the jury subsequently was unable to reach a verdict on the charge of sexual assault in the second degree, but found the defendant guilty of two counts of risk of injury. That circumstance alone indicates that the case was a close one in the eyes of the jury, making it more likely that the improper evidence might have tipped the balance.") As in *Favoccia*, the jury's inability to reach a verdict on the sexual assault charge in the present case supports the conclusion that the forensic interview's admission played a significant role in the jury's verdict of guilty of two counts of risk of injury to a child.

Finally, the video portions of the forensic interview were a significant factor in the jury's determination, because the portions provided the most damaging evidence of the defendant's alleged abuse of the child.[17] The jury heard testimony about the interview from both Concepcion and the child, and then had an opportunity to watch the interview itself. The portions of the interview shown to the jury contained the child's allegations to Concepcion, which were not fully corroborated by her trial testimony. In the forensic interview, the child stated that the defendant had put his penis inside her vagina and butt "a lot." At trial, however, the child initially denied that anyone had put anything inside her body, before changing her answer to "yes." Similarly, she denied that anything had ever happened between her and the defendant in the bedroom, before changing her answer to the affirmative. The child testified that the defendant had touched her on her pants, always on top of her clothes, but subsequently testified that he had done so "in my clothes." She testified that the defendant had touched her on the inside of her vagina and "butt," but denied that she had seen him without clothing. The child's testimony at trial was not only contradictory at times, but it also was inconsistent with the statements she made in the forensic interview. The child gave conflicting answers about whether touching had occurred and where, or what type of touching occurred. The video portions of the forensic interview, which were made available to the jury, provided the only support for the state's theory that the defendant penetrated the child as well as introducing the new allegation that the defendant removed the child's clothing. We note, as well, that during its deliberations, the jurors sent out a note requesting to see the summary of the forensic interview, but because it was not a full exhibit, the jurors were not permitted to see it. We recognize the difficulties the state faces in prosecuting cases involving allegations of sexual assaults of young children when there is no physical evidence but conclude that the child's allegations of sexual abuse by the defendant as revealed in the forensic interview were not admissible under the medical treatment exception to the hearsay rule and played a substantial role in the jury's decision to find the defendant guilty of the charge of risk of injury to a child.

We conclude that the trial court's decision to admit the excerpts of the child's forensic interview under the medical diagnosis and treatment exception to the hearsay rule constituted an abuse of discretion that was not harmless, because the evidence substantially affected the jury's verdict. We, therefore, reverse the judgment of conviction.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the child or others through whom her identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Because we conclude that the defendant is entitled to a new trial because the trial court improperly admitted portions of the video of the forensic interview that constituted harmful error, we need not address the defendant's remaining claims. We are aware that the second issue may arise again on remand, but we do not decide it today. Although there may be double jeopardy implications with regard to § 53-21 (a) (1) and (2), because this ultimately is a fact-dependent inquiry, we do not think it prudent to address it at this time. As for the third issue, the court's in camera review of the child's records, should it arise again on remand, we believe this is better left to the discretion of the trial court.

[2] On November 3, 2015, the child received a follow-up forensic physical examination at Yale New Haven Hospital.

[3] Azevedo-Rasuk was the officer who responded on October 19, 2015. Williams, a psychologist and forensic interviewer who works for Klingberg Child Advocacy Center and for the Center for Youth and Families in Torrington, testified as an expert on the techniques used by forensic interviewers to collect accurate information from young children who may be impacted by trauma from abuse.

[4] Additionally, the court ordered a standing criminal protective order prohibiting the defendant from contacting the child.

[5] Della-Giustina testified that she did not use a colposcope, a magnification tool often used in forensic medical examinations of sexual assault victims, in this examination as it is not normally available in the emergency room.

[6] Concepcion characterized the group of individuals observing the forensic interview as a "multidisciplinary team."

[7] During defense counsel's cross-examination of Concepcion, she testified as follows:

"Q. And you had met with team members, other team members prior to the interview taking place.

"A. Correct.

"Q. So you had information about what the allegations were and against whom they were made prior to the interview taking place.

"A. Yes."

[8] The transcript of the interview reveals the following exchange between Concepcion and the child:

"Concepcion: Okay. So all right. So [child] I want to tell you two quick things okay cause I think we're all done. . . . First I want to tell you thank you for coming. Okay. Did you hear what I said? Okay. So I want to thank you for coming. And the second thing I wanna make sure . . . that you're safe. Remember I said that we talk about safe things to make . . . sure that you're safe. . . . So hold on. We're not done. . . . So last thing I want to tell you . . . listen if you're ever not feeling safe or somebody bothers you or you're scared who can you tell? Who can you go to that you trust?

"[The Child]: You.

"Concepcion: Well I'm not gonna be there. How about in school if somebody bothers you. Who can you tell?

"[The Child]: The teacher.

"Concepcion: Right. Good. And how about at home if somebody bothers you? Do you have somebody you can talk to? Can you tell your grandma? Would you like to have somebody to talk to? Yes? Okay. So I'm gonna tell your grandma that you're interested in having somebody to talk to. Okay. So I'm gonna take you back to your grandma. So let's go back to your grandma."

[9] The portions of the interview that the state proffered run from pages 11 through 18 and from the bottom of page 25 through page 27 of the transcript admitted for identification as exhibit 5. The first portion begins with Concepcion asking the child to identify various parts of the pictured human bodies. The child identified the parts of the human body displayed on a chart shown to her and stated that the defendant touched her vagina (referred to as "toto" in the interview) and butt "a lot." When asked by Concepcion, the child responded in the affirmative that the defendant had

used his penis to touch her vagina. She stated that her clothes were on. The following exchange occurred when Concepcion asked the child if the defendant had taken her clothes off:

"[The Child]: I. . . my clothes on.

"Concepcion: You had your clothes on? Okay. And how

"[The Child]: And he take it off.

"Concepcion: He took your . . . did he take your clothes off? Okay. And then what happened?

"[The Child]: He was like this.

"Concepcion: He, he took it off with his hands?"

Concepcion asked if the defendant's penis had touched the child's skin or clothes. The child responded that the defendant's penis, which she described as "big," "black," and "soft," had touched her skin. Concepcion then asked the child if the defendant's penis had gone on top of her vagina or inside. The child responded in the affirmative, stating "inside" and that it had done so "a lot." The child also told Concepcion that the same was true for her butt (which she referred to as "coolo"). Specifically, she stated that the defendant's penis had gone inside, again "a lot." The child stated that the defendant told her he wanted to marry her, that he kissed her on her lips and grabbed her head "a lot," and that he "[a]sked us to have a baby." She confirmed that his name was "Freddy."

In the second portion of the video shown to the jury, Concepcion asked the child whether the defendant had put his penis "on top or inside of your toto or something else." The child responded "inside." Concepcion asked the same question in regard to the defendant's hands. The child stated that the defendant's finger had gone inside. Finally, the child stated that this had occurred in the room where the defendant sleeps and that nobody had seen it.

[10] In *Estrella J.C.*, this court upheld the admission of statements made in a forensic interview, applying the rule set out in *State* v. *Griswold*, supra, 160 Conn. App. 528. *State* v. *Estrella J.C.*, supra, 169 Conn. App. 76–80. In *Eddie N.C.*, this court upheld the admission of a forensic interview conducted by a social worker prior to the child's follow-up medical examination, relying again on *Griswold*. *State* v. *Eddie N.C.*, supra, 178 Conn. App. 173.

[11] The trial court stated in particular that "I understand while the defense is arguing that [it] really only relates to the investigation and assisting the police, the testimony really is that it supports a whole host of different interests. Medical included and I think that that is borne out by the fact that then this particular witness does refer the complainant for these two types of treatments and then those referrals do take place."

[12] The assistant state's attorney conducted the following examination of the child:

"Q. Okay. And did you tell Brenda things about those parts?

"A. Yeah.

"Q. Did anybody touch those parts?

"A. Yes.

"Q. Did anybody put anything inside those parts?

"A. No.

"Q. No.

"A. Yes.

"Q. Who?

"A. My father."

[13] The assistant state's attorney examined the child as follows:

"Q. And when you visited him on weekends did anything happen on a weekend when you went to see him?

"A. No.

"Q. Never. Nothing.

"A. Yes.

"Q. Yes. What if anything happened when you went to go see him? Tell me all about that. What would you do on the weekend?

"A. I would go eat. Have fun.

"Q. Did you ever go into his bedroom?

"A. Yes.

"Q. Did anything ever happen when you were in the bedroom with him?

"A. No.

"Q. Never.

"A. Yes.

"Q. So did things happen in the bedroom with him?

"A. Yes.

"Q. When you were in the bedroom with him, what would happen?

"A. He touched me."

[14] The defendant also argues that this court should overrule *State* v. *Griswold*, supra, 160 Conn. App. 528, and its progeny. It is axiomatic that we cannot overrule the decision made by another panel of this court in the absence of en banc consideration. *In re Zoey H.*, 183 Conn. App. 327, 340 n.5, 192 A.3d 522, cert. denied, 330 Conn. 906, 192 A.3d 426 (2018). The defendant filed a motion for en banc consideration of the present appeal, which this court denied on April 8, 2020.

[15] This court rendered its decision in *Manuel T.* in November, 2018; the present case was tried in January, 2018. In January, 2019, our Supreme Court granted the defendant's petition for certification to appeal, limited to, inter alia, the issue of whether the "Appellate Court [applied] the proper standard in determining that, in a criminal prosecution for sexual abuse of a child, hearsay statements made during a forensic interview of the child complainant are admissible under § 8-3 (5) of the Connecticut Code of Evidence?" *State* v. *Manuel T.*, 330 Conn. 968, 200 A.3d 189 (2019).

[16] We also agree with the defendant that, as a policy matter, allowing the hearsay exception to be invoked as a result of medical referrals made at the end of a forensic interview poses a risk that the state can "sanitize" the interview and subvert the hearsay exception. Ultimately, the focus of the hearsay exception is the declarant's understanding of the interview's purpose, i.e., was it relevant for medical purposes. See *State* v. *Manuel T.*, supra, 186 Conn. App. 62. Pro forma referrals at the end of an interview, even if fulfilled, do not satisfy this requirement. The evidence does not reveal that the child was aware that Concepcion would make referrals for further treatment at the end of the interview based on the information given in the interview, nor has the state shown that she was aware of the purpose of the interview when she made the hearsay statements at issue here to Concepcion.

[17] The full transcript of the interview, the full video, and the forensic report prepared by Concepcion were marked only as identification exhibits.

---